Date signed September 20, 2006

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
at GREENBELT

| | | |
|---|---|---|
| In Re: | * | |
| Maryland K.C. Incorporated | * | Case No.    02-22210-TJC |
| | * | Chapter    11 |
| Debtor. | * | |
| ************************************* | * | |
| Janet M. Nesse, Chapter 11 Trustee | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| v. | * | Adv. |
| Trishco, Inc. | * | Proc.    04-01970 |
| | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM OF DECISION FINDING IN FAVOR OF PLAINTIFF, JANET NESSE, CHAPTER 11 TRUSTEE

Plaintiff Janet M. Nesse, the Chapter 11 Trustee for the bankruptcy estate of Maryland K.C. Incorporated (the "Debtor"), filed a complaint against Trishco, Inc. (the "Defendant"), to Avoid and Recover a Preferential Transfer pursuant to 11 U.S.C. §§ 547 and 550. The Defendant filed an answer contending that the transfer was a non-avoidable transfer made in the ordinary course of business pursuant to 11 U.S.C. § 547(c)(2). For the reasons set forth below, the relief sought by the Plaintiff will be granted and a judgment in favor of the Plaintiff will be entered.

**FINDINGS OF FACT**

The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on October 22, 2002. On January 9, 2003, the Court entered an order appointing the Plaintiff as the Chapter 11 Trustee pursuant to 11 U.S.C. § 1104. The Plaintiff filed this adversary complaint on August 9, 2004, within the two year limitations period set forth in 11 U.S.C. §546, seeking to avoid, pursuant to 11 U.S.C. §§ 547 and 550, a $15,260.00 payment made by the Debtor to the Defendant, as described more fully below. The Defendant filed an answer to the complaint asserting the ordinary course of business defense under 11 U.S.C. § 547(c)(2). The Court held a trial on the Complaint on July 26, 2006.

On February 25, 2002, the Debtor, acting as the general contractor on a helicopter hanger/jet fuel system project for the United States Department of Interior, entered into a subcontract (the "Subcontract") with the Defendant, a mechanical contractor. The Subcontract provided that the Defendant would perform certain mechanical contracting work on the project, as described therein, for $123,490.00. The Subcontract further provided that the Debtor would make progress payments, less ten percent (10%) retainage, "for work satisfactorily performed no later than seven (7) days from receipt of payment from Owner by [Debtor] for [Defendant's] work."(Exhibit A at 1). The Defendant had not previously done any work for, or been a party to any contract with, the Debtor.

Defendant started work on the Subcontract around the first of March, 2002, and thereafter issued to the Debtor an invoice for work performed that month (the "March Invoice"). Defendant performed additional work in April, 2002 and invoiced the Debtor

2

for this work (the "April Invoice"). The Defendant did no work on the Subcontract in May or June, 2002.

According to the testimony of Mr. Ron Manning, a part owner and Vice President of the Defendant, the March Invoice and the April Invoice were paid by July 1, 2002. Mr. Manning testified that he knew this because no amounts were outstanding when the July work was performed. Mr. Manning further testified that he did not know when the March Invoice and the April Invoice were actually paid, but he "assumed" these two invoices were paid within thirty days or so after they were sent.

As stated above, the Defendant again worked on the Subcontract in July, 2002. On July 31, 2002, Defendant invoiced the Debtor for the July work in the amount of $15,260.00 (the "July Invoice") (Exhibit B)[1]. On or around September 11, 2002, the Defendant deposited Check No. 24272 (Exhibit C) dated September 3, 2002, in the amount of $15,260.00 from the Debtor in satisfaction of the July Invoice. No retainage was withheld by the Debtor for the July Invoice.

Mr. Manning testified that he has been in the mechanical contracting business for forty years, including twenty-three years with the Defendant. He testified that in his experience it was customary for subcontractors to be paid within thirty to forty-five days after invoice.

Mr. Manning further testified that the Federal government does not retain amounts on payments to the contractor on government projects. Therefore, the contractor does not retain amounts on payments to the subcontractor. He said the parties understood from the inception of the Subcontract that the Debtor would not retain payments from the

---

[1] Although the July 31, 2002 invoice is labeled "Invoice #02", Mr. Manning testified that the reference to "#02" was an error, and that the July 31 invoice was in fact the third invoice for the Subcontract.

3

Defendant.  He testified, however, that the Subcontract was a standard form contract that included the boiler-plate provision that the Debtor would deduct from invoice payments ten percent (10%) retainage, as described above.

## CONCLUSIONS OF LAW

*JURISDICTION*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 11 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1409.

*DISCUSSION*

The Plaintiff brought this preference action pursuant to 11 U.S.C. § 547(b).[2]  Section 547 provides, inter alia, the following rules:

> (b) The Trustee may avoid any transfer of an interest of the debtor in property --
>     (1) to or for the benefit of a creditor;
>     (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>     (3) made while the debtor was insolvent;
>     (4) made --
>         (A) on or within 90 days before the date of the filing of the petition; or,
>         (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>     (5) that enables such creditor to receive more than such creditor would receive if--
>         (A) the case were a case under Chapter 7 of this title;
>         (B) the transfer had not been made; and
>         (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

---

[2] It is important to note that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") made significant changes to Section 547. However, this case was filed on October 22, 2002, well before the effective date of BAPCPA.  See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 §1501, 119 Stat 23, 216 (2005).  Accordingly the applicable statute and related case law addressed herein are to pre-BAPCPA preference law.

4

11 U.S.C. § 547(b). At trial, the Plaintiff proffered the facts necessary to establish the prima facie elements of Section 547(b), and Defendant did not object to the proffered facts. Based on the Plaintiff's proffer and the lack of objection thereto, the Court concludes that Plaintiff has met her burden of establishing the prima facie elements of a preference under Section 547(b).

The Defendant, however, asserts that the payment on the July Invoice was within the purview of the ordinary course of business defense under 11 U.S.C. § 547(c)(2). Section 547(c) provides, in pertinent part, the following requirements:

> (c) The Trustee may not avoid under this section a transfer -
> (2) to the extent that such transfer was –
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
> (C) made according to ordinary business terms.

11 U.S.C. § 547 (c). The Defendant has the burden of proving each of the elements of Section 547(c)(2) by a preponderance of the evidence. Advo-System v. Maxway Corp., 37 F.3d 1044, 1047 (4th Cir. 1994) (citing 11 U.S.C. § 547(g)).

"Those courts testing a transfer for 'ordinariness' under section 547(c)(2) have generally focused on the prior conduct of the parties, the common industry practice, and, particularly, whether payment resulted from any unusual action by either the debtor or creditor." Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.), 956 F.2d 479, 486 (4th Cir. 1992) (quoting Collier on Bankruptcy Vol. 4 ¶ 547.10, at 547-50 to 51 (15th ed. 1990)). The "focus of [the] inquiry must be directed to an analysis of the business practices which were unique to the particular parties under consideration." Id., (quoting Waldschmidt v. Ranier (In re Fulghum Constr. Corp.), 872 F.2d 739, 743

5

(6th Cir. 1989)). This inquiry is "peculiarly factual." Id. (quoting In re First Software Corp., 81 Bankr. 211, 213 (Bankr. D. Mass. 1988)).

In order to prevail on an ordinary course of business defense, the Defendant must establish all three elements under section 547(c)(2). Lubman v. C.A. Guard Masonry Contr., Inc. (In re Gem Constr. Corp.), 262 B.R. 638, 654 (Bankr. D. Va. 2000) (citing Bigelow 956 F.2d at 488). First, the Defendant must show that the debt was incurred in the ordinary course of business or financial affairs of the Debtor and the Defendant. 11 U.S.C. § 547(c)(2)(A). "This means that the incurring of the debt would be a logical and ordinary action for these parties." Id. at 654-55.

Second, the Defendant must prove that the Debtor made the transfer in the ordinary course of business between the Debtor and the Defendant. 11 U.S.C. § 547(c)(2)(B). When determining whether a transfer took place in the ordinary course of business between a debtor and a transferee, Courts look to the following factors:

> (1) the length of time the parties were engaged in the transactions at issue;
> (2) whether the amount or form of tender differed from past practices;
> (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and
> (4) whether the creditor took advantage of the debtor's deteriorating financial condition.

Lubman, 262 B.R. at 655 (quoting Sulmeyer v. Pacific Suzuki (In re Grand Chevrolet, Inc.), 25 F.3d 728, 732 (9th Cir. 1994)).

Finally, the Defendant must show that the transfer was made in accordance with ordinary business terms. 11 U.S.C. § 547(c)(2)(C). In Advo-Systems, supra, the Court of Appeals for the Fourth Circuit has set forth a sliding scale test to determine whether a payment was made within ordinary business terms. The Court gave the following guidance:

6

> …the extent to which a preference payment's credit terms can stray from the industry norm yet still satisfy § 547(c)(2)(C) depends on the duration of the debtor-creditor relationship. The more cemented (as measured by its duration) the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of § 547(c)(2).  A "sliding-scale window" is thus placed around the industry norm. On one end of the spectrum, when the relationship between the parties is of recent origin, or formed only after or shortly before the debtor sailed into financially troubled seas, the credit terms will have to endure a rigorous comparison to credit terms used generally in a relevant industry. Id. In such a case, only those departures from [the] relevant industry's norms which are not so flagrant as to be 'unusual' remain within subsection C's protection.

Advo-System, 37 F.3d at 1049 (internal citations and quotation marks omitted).  The same Court gave the following definition for "ordinary business terms":

> ordinary business terms refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C.

Id. at 1048 (quoting In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993)).

In the case at bar, the Defendant has failed to meet its burden of showing that the payment was made in the ordinary course of business between itself and the Debtor.  Therefore, the Defendant has not met the second element of its ordinary course defense, as set forth in Section 547(c)(2)(B).[3]

Mr. Manning testified that the Defendant had sent the March Invoice and the April Invoice prior to the July Invoice that resulted in the alleged preferential transfer at issue.  Mr. Manning further testified that he did not know when these prior invoices were paid; he only was certain that they were paid prior to July 1, 2002.  Unfortunately for the Defendant, neither the March Invoice nor the April Invoice was submitted in the record, and no evidence was adduced as to when the invoices were issued or paid, other than Mr.

---

[3] Because the Court finds and concludes that the Defendant has failed to establish that the transfer was in the ordinary course of business between the Debtor and the Defendant, the Court need not consider the Section 547(c)(2)(A) or (c)(2)(C) elements of the Defendant's ordinary course defense.

Manning's testimony that they were paid by July 1, 2002 and his assumption that they were paid timely.

While these prior invoices and payments fall outside the 90 day preference window and are not subject to recovery by the Plaintiff, the facts surrounding the payment of these two invoices are critical to a determination of whether the payment of the July Invoice was in the ordinary course of business between the Defendant and the Debtor. The record establishes that there were three invoices between the Defendant and the Debtor, and that the Debtor made a payment on each of those invoices. Thus, in order for the Court to determine whether the payment on the July Invoice was made within the ordinary course of business between the Debtor and the Defendant, the Court needs evidence establishing when the Debtor paid the March Invoice and the April Invoice.

Assuming the March Invoice and the April Invoice were each issued on the last day of its respective month, similar to the July Invoice, the record establishes only that the March Invoice was paid within 90 days of its issuance and the April Invoice was paid within 60 days of its issuance. Both periods are substantially longer than the period for payment of the July Invoice, which was thirty-four days by reference to the date of the check and forty-two days by reference to the date of deposit. While the March Invoice and the April Invoice may have been paid sooner than ninety and sixty days, respectively, the Court has no way of making that determination.[4]

The burden is on the Defendant to establish all the elements of this defense. The testimony of Mr. Manning showed that there was a payment history between the Debtor

---

[4] Because of the significance of the timing on these payments to the Defendant's ordinary course defense, the Court will not accept Mr. Manning's "assumption" that the March Invoice and April Invoice were paid timely. See Fed.R.Evid. 602 (Requiring that a witness must have personal knowledge of the subject of the testimony).

8

and the Defendant.  Nonetheless, the Defendant failed to provide any evidence as to the method and timing of these prior payments.  Consequently, the Defendant cannot show that the payment on the July Invoice was made within the ordinary course of business between the Debtor and the Defendant because the Defendant has failed to establish what was ordinary between the parties.  Therefore the Defendant has failed to prove the affirmative defense that the transfer was made in the ordinary course of business.

## CONCLUSION

For the reasons stated above, the Court finds that the payment by the Debtor to the Defendant in the amount of $15,260.00 by check dated September 3, 2002, constituted a preference under 11 U.S.C. § 547(b).  Moreover, the Court finds that the transfer is not immune from recovery by the Plaintiff because the Defendant has failed to meet its burden of establishing the affirmative defense of ordinary course of business.  Accordingly, this Court will enter a judgment in favor of the Plaintiff in the amount of $15,260.00.

Copies To:

Plaintiff
Defendant
All Counsel
Chapter 11 Trustee
U.S. Trustee

**END OF ORDER**

Case 04-01970    Doc 42    Filed 09/21/06    Page 10 of 10